[No. E030207. Fourth Dist., Div. Two. July 11, 2002.]

VERLE V. FORBES, Individually and as Personal Representative, etc., Plaintiff and Appellant, v.
COUNTY OF SAN BERNARDINO et al., Defendants and Respondents.
A-L FINANCIAL CORPORATION, Plaintiff and Appellant, v.
COUNTY OF SAN BERNARDINO et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A, II.B.7-8, and II.C.

## COUNSEL

Law Offices of Barbara B. Milliken and Barbara B. Milliken for Plaintiff and Appellant Verle V. Forbes.

Lincoln D. Gardner for Plaintiff and Appellant A-L Financial Corporation.

Alan K. Marks, County Counsel, and Alan L. Green, Deputy County Counsel, for Defendant and Respondent County of San Bernardino.

Bill Lockyer, Attorney General, James M. Schiavenza, Assistant Attorney General, Richard Rojo and D. L. Helfat, Deputy Attorneys General, for Defendant and Respondent State of California.

## OPINION

**RICHLI, J.**—Plaintiffs-appellants were adversaries in a prior civil action. In this action, they sued the County of San Bernardino (the County) and State of California (the State) for intentional and negligent destruction of court records relating to the prior action and for denial of civil and constitutional rights. The trial court sustained the County's and State's demurrers without leave to amend. We affirm the judgment.

I

### FACTUAL AND PROCEDURAL BACKGROUND

As explained more fully *post*, this is the second appeal to this court arising from the underlying dispute. On our own motion, we take judicial notice of

our file and our unpublished opinion in the prior appeal, case No. E020941. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)[1] The procedural history which follows is based in part on the facts reflected in that file and opinion.

## A. *The Prior Action*

In 1982, Verle and Janet Forbes sued A-L Financial Corporation (A-L) and Allan Lobel in San Bernardino County Superior Court, case No. VCV 3541 (the prior action). After the prior action was filed, Janet Forbes died, and Verle V. Forbes continued the action as the representative of her estate. Verle V. Forbes and the estate are referred to as the Forbes plaintiffs.

The prior action involved a contractual dispute arising from A-L's purchase of consumer contracts from the Forbes plaintiffs' cookware business. A-L filed a cross-complaint against the Forbes plaintiffs. Each side alleged the other had retained funds to which it was not entitled.

The prior action was tried in several phases over a number of years. In 1997, the court entered a final judgment awarding the Forbes plaintiffs $1,071 against A-L and awarding A-L $32,038.47, plus $87,230.90 in attorney fees, against the Forbes plaintiffs.

Both sides appealed to this court. The Forbes plaintiffs moved to vacate the judgment and for a new trial, pursuant to Code of Civil Procedure section 914. That section provides in relevant part that, when it is impossible to obtain a reporter's transcript on appeal due to the loss or destruction of the reporter's notes, the court may vacate the judgment appealed from and order a new trial.

This court granted the Forbes plaintiffs' motion in February 2000. We found that, although some of the reporter's transcripts from the trial of the prior action were available, virtually all of the transcripts from the phase of the trial relating to the Forbes plaintiffs' complaint were not available. Since we would need those transcripts to rule on several contentions on appeal, the appeal could not proceed, and a new trial was required.

## B. *The Present Action*

The Forbes plaintiffs filed the present action against the County and the State in 1999. A-L filed a separate action against the County and the State alleging the same claims as the Forbes plaintiffs alleged in their action. The

[1]Our judicial notice of the file moots the State's unopposed request for judicial notice of particular documents in the file.

two actions were consolidated. The Forbes plaintiffs and A-L are referred to collectively in this opinion as plaintiffs, and the County and the State are referred to collectively as defendants.

The operative complaints, to which the demurrers were sustained without leave to amend, are the second amended complaint of the Forbes plaintiffs and the first amended complaint of A-L. In relevant part, the complaints alleged the following facts.

After plaintiffs had filed their appeals in the prior action, the court clerk reported that substantial portions of the clerk's and reporters' transcripts were either missing or had been inadvertently lost or destroyed. Plaintiffs are informed and believe the transcripts were intentionally or negligently destroyed and that the destruction was related to the manner in which the case was tried and/or to plaintiffs' allegations of improper conduct on the part of the court commissioner who presided over portions of the trial. Defendants also withheld from plaintiffs the facts and circumstances leading to the destruction.

As a proximate result of the loss of the transcripts, plaintiffs suffered damages, which include loss of a judgment in their favor and the costs of litigating the prior action. In addition, due to the passage of time, plaintiffs were effectively prevented from relitigating the prior action and therefore had to dismiss that action.

Based on these allegations, plaintiffs asserted causes of action for (1) intentional destruction of court records, (2) negligence, and (3) denial of civil and constitutional rights. In sustaining the County's and the State's demurrers to all three causes of action, the court ruled: (1) there is no cause of action for intentional destruction of evidence under *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511] and *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464 [84 Cal.Rptr.2d 852, 976 P.2d 223]; (2) plaintiffs had not pled a basis for statutory liability for negligence or facts creating a duty to support a negligence claim; and (3) plaintiffs had not alleged conduct under color of state law that deprived them of any right secured by the United States Constitution or laws. In addition, the State was not a person subject to suit under 42 United States Code section 1983.

## II

### DISCUSSION

A. *Standards of Review*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Intentional and Negligent Destruction of Court Records (First and Second Causes of Action)*

1. *Tort Liability of Public Entities*

Plaintiffs' first and second causes of action, for intentional and negligent destruction of court records, attempt to assert tort claims against public entities under state law. ■ Tort liability of public entities in California is governed by the Tort Claims Act (Gov. Code, § 810 et seq.).[2] The act provides generally that public entities are not liable for injuries "[e]xcept as otherwise provided by statute . . . ." (§ 815, subd. (a).) Section 815 "abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation." (Sen. Com. com., 32 West's Ann. Gov. Code, (1995 ed.) foll. § 815, p. 167.) Accordingly, "public entities may be held liable only if a statute . . . is found declaring them to be liable." (*Ibid.*; see also *Creason v. State Department of Health Services* (1998) 18 Cal.4th 623, 630 [76 Cal.Rptr.2d 489, 957 P.2d 1323].)

Section 815.6 provides a statutory basis for public entity liability under certain circumstances. It states: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Section 815.6 "declares the familiar rule, applicable to both public entities and private persons, that failure to comply with applicable statutory or regulatory standards is negligence unless reasonable diligence has been exercised in an effort to comply with those standards." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code, *supra,* foll. § 815.6, p. 210.)

2. *Plaintiffs' Claims Under Section 815.6*

Plaintiffs contend they have stated a valid tort claim against defendants pursuant to section 815.6. They cite three Government Code sections, which

---

\*See footnote, *ante,* page 48.

[2] All further statutory references are to the Government Code unless otherwise indicated.

they contend imposed a duty on defendants to preserve the records of the trial in the prior action. Section 68152 permits trial court clerks to destroy reporters' notes "after final disposition of the case . . . ." Section 69846 requires superior court clerks to "safely keep or dispose of according to law all papers and records filed or deposited in any action or proceeding before the court . . . ." Finally, section 69955 provides that reporting notes may be destroyed "upon the order of the court." (§ 69955, subd. (e).)[3] According to plaintiffs, these statutes imposed a mandatory duty on defendants to retain the trial records until either the action was finally resolved or the court ordered them destroyed. Defendants' failure to do so gave rise to liability under section 815.6.

### 3. *Liability Against the State Under Section 815.6*

■ With respect to plaintiffs' claims against the State based on section 815.6, an immediate problem appears: None of the statutes on which plaintiffs rely purport to impose any duty on the State. Instead, as our recitation *ante* shows, the statutes place a duty on trial court clerks and, perhaps, on court reporters to preserve trial court records. Neither the State nor any of its employees are mentioned in any of the statutes.

To support liability under section 815.6, a statute must impose a duty on the specific public entity sought to be held liable. For example, the Supreme Court held that a statute imposing a duty on "[e]very teacher in the public schools" to "hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess" (Ed. Code, § 44807) could not support a claim against a *school district* under section 815.6. The statute did not purport to impose a duty on the district itself. (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 939 [80 Cal.Rptr.2d 811, 968 P.2d 522].)

Here, similarly, plaintiffs have failed to identify any statute imposing a duty on the State to preserve trial court records. Accordingly, they cannot assert liability against the State based on section 815.6.

### 4. *"Injury" Under Section 815.6*

Plaintiffs' purported claims under section 815.6 suffer from another potential defect, which affects liability against not only the State but also the

---

[3]Though as defendants note plaintiffs did not cite these statutes in their complaints, we must of course reverse the sustaining of the demurrers if the complaints could be amended to state a valid claim by citing the statutes. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

County. Section 815.6 imposes liability only "for an injury" caused by the failure of a public entity to discharge its statutory duty. ■ The definition of "injury" for purposes of section 815.6 is set forth in section 810.8. As explained by the Supreme Court in *Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th 962 (*Aubry*): "For purposes of the Tort Claims Act, injury is defined as 'death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, *of such nature that it would be actionable if inflicted by a private person.*' (Gov. Code, § 810.8, italics added.)." (*Id.,* at p. 968.) As further explained by the California Law Revision Commission: "The purpose of the definition is to make clear that public entities and public employees may be held liable only for injuries to the kind of interests that have been protected by the courts in actions between private persons." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code, *supra,* foll. § 810.8, p. 155.)

In *Aubry*, the Supreme Court considered whether a public hospital district could be held liable under section 815.6 for not requiring its contractor to pay the prevailing wage required by the Labor Code for public works projects. The court concluded that the harm suffered by the underpaid workers was not an "injury" within the meaning of section 810.8, because it would not "be actionable if inflicted by a private person." Since the Labor Code only required payment of the prevailing wage on public works projects, a private person could not be held liable for failing to pay the prevailing wage and the injury to the workers was "not included within the Tort Claims Act's definition of injury." (*Aubry, supra,* 2 Cal.4th 962 at p. 968.)

Under *Aubry*, we therefore must determine whether the "injuries" on which plaintiffs' first and second causes of action are based—the intentional and negligent destruction of the court records—would be actionable against a defendant which was not a public entity. We turn now to that question.

### 5. *Liability of Private Persons for Destruction of Evidence*

In *Cedars-Sinai Medical Center v. Superior Court, supra,* 18 Cal.4th 1 (*Cedars-Sinai*), the California Supreme Court held there is no tort remedy for the intentional spoliation of evidence by a party to the cause of action to which the spoliated evidence is relevant in cases in which the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action. (*Id.,* at pp. 17-18.) In *Temple Community Hospital v. Superior Court, supra,* 20 Cal.4th 464 (*Temple Community*), the court extended its holding in *Cedars-Sinai* to cases in which the person who destroys or suppresses the evidence is not a party to the underlying lawsuit. (*Temple Community, supra,* at p. 478.)

The Supreme Court in *Cedars-Sinai* and *Temple Community* cited several public policy considerations in support of its holdings that no tort liability should be recognized for spoliation of evidence. First among these was the policy against creating "derivative" tort remedies for misconduct occurring in the course of litigation. Creating a tort remedy for spoliation would spawn "endless litigation" in which a dispute could never be finally resolved, because an unsuccessful litigant could always file a new action claiming that evidence which might have affected the outcome of the original action had been destroyed by another litigant or a third party. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 8-11; accord, *Temple Community, supra,* 20 Cal.4th at pp. 471-473.)

Second, the court observed that a number of nontort remedies already existed to deter the intentional destruction of evidence by litigants or third parties. The court in the underlying action could impose evidentiary sanctions, such as an inference that the unavailable evidence was unfavorable to the party who destroyed or suppressed it. The victim of the spoliation similarly could be permitted to explain to the jury why the evidence was not available, so that the jury would not hold against the victim its failure to produce the evidence. The court could also impose monetary or contempt sanctions on the spoliator. In addition, any person willfully destroying evidence would incur criminal liability. (Pen. Code, § 135; *Cedars-Sinai, supra,* 18 Cal.4th at pp. 11-13; *Temple Community, supra,* 20 Cal.4th at pp. 474, 476-477.)

Finally, the court in *Cedars-Sinai* and *Temple Community* noted that in many cases of alleged spoliation it would be impossible to prove causation or damages, because there would be no way to determine what the unavailable evidence would have shown, or even which party it would have helped. For the same reason, recognizing a spoliation cause of action would risk anomalous results in which parties could recover damages for spoliation of evidence when they would not have won the underlying action if the evidence had been available. To avoid being exposed to such unwarranted liability, one in the possession of evidence would have to take extraordinary measures to preserve it for an indefinite period, resulting in increased costs with little benefit in most cases. (*Cedars-Sinai, supra,* 18 Cal.4th at pp. 13-15; *Temple Community, supra,* 20 Cal.4th at pp. 474-476.)

Neither *Cedars-Sinai* nor *Temple Community* considered whether tort liability should be permitted for negligent, as opposed to intentional, destruction or suppression of evidence. In several later decisions, however, various Courts of Appeal concluded the same considerations identified in *Cedars-Sinai* and *Temple Community* should preclude recognition of tort liability for

negligent spoliation, whether by litigants or third parties. (*Coprich v. Superior Court* (2000) 80 Cal.App.4th 1081, 1090 [95 Cal.Rptr.2d 884]; *Lueter v. State of California* (2002) 94 Cal.App.4th 1285, 1301 [115 Cal.Rptr.2d 68]; see also *Penn v. Prestige Stations, Inc.* (2000) 83 Cal.App.4th 336, 344 [99 Cal.Rptr.2d 602] [policy reasons relied upon in *Cedars-Sinai* and *Temple Community* "arguably" defeat liability for negligent spoliation].) This court, in fact, reached the same conclusion in *Farmers Ins. Exchange v. Superior Court* (2000) 79 Cal.App.4th 1400, 1407 [95 Cal.Rptr.2d 51].

### 6. *Effect of Statutory Duty to Preserve Evidence*

In our view, the decisions discussed *ante* establish beyond reasonable dispute that there is no tort cause of action against a litigant or third party for intentional or negligent destruction of evidence. Hence, the injuries complained of in plaintiffs' first and second causes of action are not the kind that would be actionable if inflicted by a private person. Under *Aubry*, therefore, there is no compensable injury under section 810.8 and no basis for tort liability based on a mandatory statutory duty under section 815.6.

For this reason, plaintiffs' argument that the spoliation cases are inapposite because they involved parties who, unlike defendants here, had no statutory duty to maintain records is misplaced. As *Aubry* makes clear, the fact a public entity has a statutory duty to act or refrain from acting is not enough to create tort liability for a violation of that duty. Rather, the plaintiff also must show the resulting injury would be actionable against a private person. The spoliation cases establish that the injuries alleged in plaintiffs' first and second causes of action do not meet that requirement.

The conclusion that a statutory duty to preserve evidence is not enough by itself to warrant tort liability is supported not only by the Supreme Court's analysis in *Aubry*, but also by the court's discussion in *Temple Community*. The court in *Temple Community*, in fact, rejected the idea that violation of such a duty should lead a court to employ "the burdensome and inaccurate instrument of derivative tort litigation in the case of third party spoliation." Instead, the court stated: "We observe that to the extent a duty to preserve evidence is imposed by statute or regulation upon the third party, the Legislature or the regulatory body that has imposed this duty generally will possess the authority to devise an effective sanction for violations of that duty." (*Temple Community, supra,* 20 Cal.4th at p. 477.)

Here, the Legislature has provided a remedy for the loss or destruction of court records in the form of Code of Civil Procedure section 914, the remedy granted by this court in the prior appeal. The Legislature also has imposed

criminal liability on anyone who intentionally destroys evidence. (Pen. Code, § 135.) The absence of any provision by the Legislature for a tort remedy suggests none was intended.

*Lueter v. State of California, supra,* 94 Cal.App.4th 1285 (*Lueter*) also supports the conclusion there should be no tort liability notwithstanding a public entity's duty to preserve evidence. The plaintiffs in *Lueter* were sued when a tire on their tanker truck blew out and caused an accident. The plaintiffs alleged the California Highway Patrol (CHP) took a piece of the tire from the scene as potential evidence but later negligently threw it away, preventing the plaintiffs from proving the tire was defective.

The court held the plaintiffs could not assert a claim for negligent spoliation. Significantly for our purposes, the *Lueter* court reached this conclusion despite the plaintiffs' argument that the CHP, as a state agency, had a duty to preserve the evidence. The court noted that under section 815.2, subdivision (a) a public entity is liable for injury proximately caused by its employee if the employee would be liable. Section 820, subdivision (a) provides that a public employee "is liable for injury caused by his act or omission to the same extent as a private person." Consequently, "absent a statute specifically imposing liability, a public entity and its employees are not liable for causes of action in tort that could not be pursued against a private party." (*Lueter, supra,* 94 Cal.App.4th at p. 1300.) Since the tort of negligent spoliation cannot be pursued against a private party, "[i]t follows that any liability for spoliation against a public entity and its employees must be created statutorily rather than judicially." (*Ibid.*)

The *Lueter* court further held that "[i]n order to find a statutorily based cause of action for negligent spoliation, it is not enough to find that the public entity had a legal duty with respect to property. Even though a person may have a duty to preserve evidence, countervailing considerations dictate against an expansive, speculative tort of spoliation. [Citations.] Instead, a duty to preserve evidence should be addressed through other means [citation], such as effective sanctions devised by the Legislature or by regulatory bodies. [Citation.] It follows that in order to establish a tort for spoliation of evidence, a statute must expressly impose a spoliation remedy." (*Lueter, supra,* 94 Cal.App.4th at p. 1300.)

*Lueter* thus reached the same conclusion as did *Aubry,* though by a different statutory route. Where *Aubry* focused on the absence of a compensable "injury" under sections 810.8 and 815.6, *Lueter* relied on the limitation of public entity liability for acts of employees under sections 815.2 and 820. The important point for purposes of this case is that both courts found

the existence of a statutory duty to be an inadequate basis for tort liability in the absence of a statute expressly creating such liability where the injury giving rise to the claim would not be actionable against a private party. The reasoning of both *Aubry* and *Lueter* therefore supports the trial court's finding of no liability in this case.

 Finally, even if we did not conclude plaintiffs' claims for intentional and negligent destruction of records were foreclosed by the authorities discussed above, we would reach the same conclusion based on the public policy considerations that led the Supreme Court to reject tort liability in *Cedars-Sinai* and *Temple Community*. Most of those considerations apply fully to the present case. First, recognizing liability in this context would encourage the kind of "derivative" litigation the Supreme Court sought to avoid. Indeed, such litigation already has occurred, with the prior action arising from the original contractual dispute spawning the current tort action alleging destruction of records. If liability were recognized, there would be a tort lawsuit in every case in which an appellate court granted a new trial pursuant to Code of Civil Procedure section 914. Whichever party lost the retrial could always argue it would have won either the appeal or the retrial had the reporter's transcript of the first trial not been lost.

Second, as noted, the Legislature has devised nontort remedies to address the problem of destruction of records, in the form of Code of Civil Procedure section 914 and Penal Code section 135. Plaintiffs' argument that the remedy of a new trial under section 914 is an empty one because the passage of time has made it impossible to retry the case is not persuasive. An appeal and retrial is a possibility in every case. It is incumbent on the parties to take steps to insure their ability to retry the case if a retrial becomes necessary.

Finally, the problem of the impossibility of proving causation and damages applies with particular force in this case. Since the plaintiffs in this case were adversaries in the prior action, they could not each have been damaged by the destruction of the records. At least one party would have lost the prior appeal regardless of whether the trial records had been available. What the outcome of that appeal and any resulting retrial might have been is a matter of pure speculation that should not serve as a basis for tort liability.

7., 8.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 48.

C. *Civil/Constitutional Rights Claims (Third Causes of Action)\**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III

DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.

Hollenhorst, Acting P. J., and Ward, J., concurred.

On August 12, 2002, the opinion was modified to read as printed above. The petition of appellant A-L Financial Corporation for review by the Supreme Court was denied October 16, 2002.

---

\*See footnote, *ante,* page 48.